CHRIS D. KUHNER, ESQ.
(Bar No. 173291)
**KORNFIELD, NYBERG, BENDES,
KUHNER & LITTLE P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: c.kuhner@kornfieldlaw.com

Proposed Attorneys for Debtor-In-Possession

The following constitutes the order of the Court.
Signed: November 8, 2024

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PRECISION SWISS PRODUCTS, INC.,<br><br>                              Debtor. | Case No. 24-51678 MEH<br><br>Chapter 11<br><br>**ORDER GRANTING DEBTOR'S MOTION TO APPROVE OVERBID AND AUCTION PROCEDURES AND BREAKUP FEES AND EXPENSE REIMBURSEMENT**<br><br>Date: November 7, 2024<br>Time: 10:00 a.m. Pacific Time<br>Ctrm: 11<br>U.S. Bankruptcy Court<br>280 South First Street, 3rd Fl.<br>San Jose, California 95113<br>Videoconference via Zoom |

Upon the *Motion for Approval of Overbid and Auction Procedures and Breakup Fees and Expense Reimbursement* filed November 4, 2024 [Docket No. 7] (the "Motion")[1] Precision Swiss Products, Inc, debtor in possession in the above referenced bankruptcy case (the "Debtor") seeking an order approving, among other things, the *Overbid and Auction Procedures* and *Overbid Notice of Opportunity to Overbid and Auction* attached as **Exhibit A** to the Motion, including bid protections in favor of Debtor's assets to ERA Parent, LP d/b/a BTX Precision, a Delaware corporation or its designee/assignee ("Stalking Horse Bidder"), all as more fully set forth in the Motion; the Motion having come for hearing before the Court; notice of the hearing on the Motion having been properly given; the Court having considered the Motion, all objections both filed and presented at the hearing, as well as the arguments of counsel present; and upon record of the hearing on the Motion and of this case; and the relief requested in the Motion being in the best interests of the Debtor, its estate, and other parties in interest; and after due deliberation and sufficient cause appear therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

B. The Overbid and Auction Procedures, a copy of which is attached to the Motion, are fair, reasonable and appropriate, and are reasonably designed to maximize the value to be achieved for the estate. Without limiting the foregoing, establishing the ability to (i) offer the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement; and (ii) provide other appropriate and customary protections to the Stalking Horse Bidder as set forth in the Motion and Overbid and Auction Procedures to incentivize bids is a reasonable exercise of the Debtors' business judgment.

---

[1] Capitalized terms used and not defined herein have the meaning ascribed to such terms in the Motion or the Overbid and Auction Procedures, as applicable.

C. The Overbid and Auction Procedures for the assumption and assignment of executory contracts and unexpired leases are fair, reasonable, and appropriate, and comply with section 365 of the Bankruptcy Code.

D. The Sale process timeline and related noticing procedures set forth in the Overbid and Auction Procedures are appropriate in the circumstances of these cases and are, together with the Overbid Notice of Opportunity to Overbid and Auction, reasonably calculated to provide all interested parties with adequate notice of the proposed Sale and related milestones and deadlines and are approved pursuant to sections 102(1) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006(c)(1).

E. The entry of this Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

F. Good and sufficient business reasons exist for the Court to authorize the Debtor to enter into the Stalking Horse Agreement, to designate the Stalking Horse Bidder as the stalking horse bidder, and to approve the Bid Protections set forth in the Stalking Horse Agreement, including:

- The Stalking Horse Bidder would not have entered into the BTX LOI, the Stalking Horse Agreement or agreed to act as the Stalking Horse Bidder without the Bid Protections negotiated as part of the Stalking Horse Agreement.

- The Bid Protections are the product of negotiations between the Debtor and the Stalking Horse Bidder conducted in good faith and at arm's length.

- The Bid Protections are actual and necessary costs and expenses of preserving the Debtor's estate and commensurate to the real and substantial benefit conferred upon the Debtor's estate by having the Stalking Horse Bidder; and

- The Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale transaction under the Stalking Horse Agreement, and the substantial efforts that have and will be expended by the Stalking Horse Bidder notwithstanding that the proposed Sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Sale Assets will be received.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. All objections to the Motion or the relief provided herein including, but not limited to, the *United States Trustee's Omnibus Opposition to Debtors' Emergency First Day Motions and Reservation of Rights* (Docket No. 17), that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Overbid and Auction Procedures is hereby incorporated as if fully set forth herein and approved. The Overbid Notice of Opportunity to Overbid and Auction is hereby incorporated as if fully set forth herein and approved.

4. **Approval of Bid Protections**:

    - Pursuant to the Stalking Horse Agreement, the Debtor has agreed to pay to the Stalking Horse Bidder a break-up fee in an amount equal to (a) $150,000 (the "Break-Up Fee") plus (b) the amount of the reasonable, out-of-pocked and documented expenses the Stalking Horse Bidder incurred in connection with the Sale and related matters up to an aggregate amount of $200,000 (such expense reimbursement, the "Expense Reimbursement Amount" and, together with the Break-Up Fee, the "Bid Protections").

    - The Bid Protections are hereby approved, and the Debtor is authorized and directed to promptly pay, as they become due pursuant to the terms of the Stalking Horse Agreement, any amounts owed to the Stalking Horse Bidder on account of the Bid Protections in accordance with the Stalking Horse Agreement.

    - The obligation of the Debtor to pay the Bid Protections in accordance with the Stalking Horse Agreement shall be entitled to superpriority administrative expense status against the estate pursuant to Sections 503 and 507 of the Bankruptcy Code. Notwithstanding anything contained in any order approving the use of cash collateral or debtor-in-possession financing to the contrary, the Debtor's obligation to pay the Bid Protections to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement shall be carved out from any of the collateral securing the Debtor's pre- or post-petition secured lenders.

5. The Stalking Horse Agreement is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Overbid and Auction Procedures.

6. Any extension of the deadlines with respect to the Sale as set forth in the Overbid and Auction Procedures shall be in accordance with the Overbid and Auction Procedures and the Stalking Horse Agreement.

7. Absent further order of the Court, no person or entity (other than the Stalking Horse Bidder) shall be entitled to any expense reimbursement or break-up fee, "topping," termination, or other similar fee or payment by the Debtor for submitting a bid for the Sale Assets, or in any way participating in an Auction or the Debtor's Sale process.

8. A reasonable opportunity to object or be heard regarding the relief granted herein has been afforded to all parties in interest in this chapter 11 case.

9. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) and 6006(d), or any applicable provisions of the Bankruptcy Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

10. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order, including as stated on the record of the hearing.

Approved as to form

Dated: November 8, 2024

By: /s/ Mike Chow
Mike Chow, Trial Attorney
Attorneys for United States Trustee

Vedder Price

Dated: November 8, 2024

By: /s/ William W. Thorsness
William W. Thorsness
Attorneys for ERA Parent, LP d/b/a BTX Precision, a Delaware corporation or its designee/assignee

BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") have been approved and authorized by order (the "Sale Procedures Order") of the United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Court") in the Chapter 11 case (the "Case") of Precision Swiss Products, LLC (the "Debtor"). These procedures shall govern the proposed sales (each, a "Sale") of the Sale Assets (as defined below), including any auction (the "Auction") conducted in connection therewith, pursuant to the Debtor's motion for an order authorizing the Sale and granting related relief (the "Sale Motion").

Sale Assets. The assets to be sold pursuant to these Bidding Procedures (the "Sale Assets") shall consist of substantially all of the Debtor's tangible and intangible personal property used in its medical device, aerospace/defense and semi-conductor component manufacturing operations as defined on the attached Schedule A. The Sale Assets do not include the Excluded Assets (as defined below) owned by the Debtor. The Sale Assets may be sold in individual lots or a combination of lots as determined by the Debtor. The Sale Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent permitted under Section 363 of the Bankruptcy Code, with all liens transferred to the proceeds of sale.

1. Excluded Assets. Specifically excluded from the Sale Assets are (i) cash now or subsequently held by the Debtor in bank accounts on behalf of the bankruptcy estate, (ii) the purchase price to be delivered to the Debtor in connection with any approved sale of the Sale Assets, (iii) notes receivable owed to the Debtor from insiders, including without limitation, officers, directors and/or shareholders of the Debtor, (iv) the Debtor's books and records (to the extent not related to the Sale Assets), (v) insurance policies or the proceeds thereof, (vi) with the exception of any claims or causes of action related to the Sale Assets, any claims or causes of action which may be asserted by or on behalf of the Debtor against any party, including but not limited to claims or causes of action under Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553, and (vii) any assets that are expressly excluded by the Debtor from the Sale (collectively, the "Excluded Assets").

2. Diligence by Prospective Bidders. The Debtor's investment banker, SC&H Group, Inc. ("SC&H"), will assist the Debtor in connection with any Sale of the Sale Assets. The Debtor, by and through SC&H, shall give notice of the proposed Sale and these Bidding Procedures to prospective bidders, provide information to any such prospective bidder, and allow any such prospective bidder to conduct due diligence in connection with its consideration of a potential bid for the Sale Assets; provided, however, that any such prospective bidder desiring to conduct

due diligence shall execute a confidentiality agreement in a form acceptable to the Debtor in its reasonable discretion, which by its terms will inure to the benefit of the successful bidders, to the extent of confidential information relating to the Sale Assets acquired by such party.

3. <u>Bankruptcy Court Jurisdiction</u>. In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Sellers, SC&H, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, the Sellers, Bidders and Qualified Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court with respect to these Bidding Procedures and the Sale, (b) bring any such action or proceeding in the Court with respect to these Bidding Procedures and the Sale, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding with respect to these Bidding Procedures and the Sale and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

5. <u>Stalking Horse Designation and Approved Bid Protections</u>. The Debtor has designated, and the Sale Procedures Order has approved, ERA Parent, LP d/b/a BTX Precision as the stalking horse bidder ( "<u>Stalking Horse Bidder</u>") entitled to the Bid Protections (defined in the Stalking Horse Agreement) with respect to all of the Sale Assets, and have entered into a letter of intent ("<u>LOI</u>") outlining the terms of their bid. On or before November 11, 2024 (which may be extended by the Debtor and Stalking Horse Bidder), the Debtor will enter into a definitive agreement of sale with the Stalking Horse Bidder (the "<u>Stalking Horse Agreement</u>"). The Stalking Horse Bidder is a Qualified Bidder (defined below), and its Stalking Horse Agreement is a Qualified Bid (defined below) for purposes of these Bidding Procedures, the Auction and the Sale Hearing.

6. <u>Bid Requirements</u>. Any entity that is interested in purchasing all or any portion of the Sale Assets ( "<u>Bidder</u>") must submit to SC&H a bid (an "<u>Initial Bid</u>") in conformance with this paragraph, in a manner such that the Initial Bid is received by SC&H no later than the Bid Deadline (as defined below). Every such Initial Bid must:

a. The Bidder must submit a written and signed irrevocable offer (i) confirming that the Bidder offers to consummate a sale transaction on the same terms and conditions

set forth in the Stalking Horse Agreement, except that the competing bid shall be in an amount at least equal to a Baseline Bid (defined below), (ii) confirming that the Initial Bid will remain irrevocable until the closing of the sale of the Sale Assets pursuant to the Bidder's Agreement (defined below), (iii) confirming that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, (iv) confirming that the Bidder has relied solely upon its own independent review and investigation and that it did not rely on any written or oral representation except as expressly provided in the Bidder's Agreement (defined below), and (v) confirming that in the event it submits a bid that is determined to be the second highest bid, such Bid shall serve as a Back-up Bidder (defined below).

b. Include an executed copy of a definitive Asset Purchase Agreement (the "<u>Bidder's Agreement</u>") specifying the Sale Assets to be purchased at closing and include a purchase price allocation. The Bidder's Agreement shall include a marked copy against the Stalking Horse Agreement to show all changes requested by the Bidder. The Bidder's Agreement also shall (i) specify any executory contracts or unexpired leases which are to be assumed by the Debtor and assigned to the Bidder at closing, and (ii) shall require the Bidder to pay any cure costs required to be paid in order for the Debtor to assume and assign such executory contracts and unexpired leases to the Bidder at closing.

c. Any Initial Bid must propose a purchase price that exceeds the value of the Stalking Horse Bid (which value shall be determined after accounting for anticipated closing date adjustments set forth in the Stalking Horse Agreement) by both an amount equal to the Bid Protections (as defined in the Stalking Horse Agreement)[1] plus a minimum overbid of $250,000 (a "<u>Baseline Bid</u>").

d. Be irrevocable, subject only to final approval of the Court, and not subject to further due diligence or conditional upon obtaining financing or any third-party approvals.

e. Be accompanied by admissible evidence establishing the Bidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code.

f. Be accompanied by (i) financial statements or admissible evidence establishing that the Bidder is ready, willing, authorized, capable, and qualified financially, legally, and otherwise, of unconditionally performing all obligations under the Bidder's Agreement (a "<u>Transaction Agreement</u>"), in the event that it submits the

---

[1] For the avoidance of doubt, the Bid Protections approved in the Sale Procedures Order include the $150,000 Break-Up Fee, plus the $200,000 Expense Reimbursement.

prevailing bid at the Sale Hearing, and (ii) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Initial Bid without the consent of any entity that has not been obtained.

g. Be accompanied by a deposit equal to ten percent (10%) of the fixed purchase price under the Transaction Agreement (the "Deposit Amount") in the form of a wire transfer or cashier's check payable to the Debtor therein and to be held in a non-interest-bearing segregated account pending completion of the Auction, and subject to the provisions set forth below.

h. With the exception of the Stalking Horse Bid, not request or entitle the Bidder to any break-up fee, expense reimbursement, or similar type of payment.

i. An Initial Bid that is a "credit bid" under section 363(k) of the Bankruptcy Code (each, a "Credit Bid") shall be applied only to the Sale Assets in which the party submitting the Credit Bid holds a validly perfected security interest .

j. Each Initial Bid shall fully disclose the identity, including the ultimate controlling person(s) as well as the country of domicile and principal place of business, of each person or entity bidding for the Sale Assets or sponsoring, financing (including through the issuance of debt in connection with such bid), or otherwise participating in such bid (including through license or similar arrangement), and the complete terms of any such participation, including any agreement, arrangement, undertaking, or understanding in relation to such participation, and shall also disclose any past or present connections or agreements with the Debtor, any other known Bidder or Qualified Bidder, any officer or director of the foregoing, and any of the Debtor's pre- or post-petition secured lenders.

7. Bid Deadline. Any Initial Bid, including any intention to Credit Bid, must be delivered in writing so that it is actually received by SC&H by 4:00 p.m. Pacific Time, on December 5, 2024 (the "Bid Deadline"). SC&H shall provide the Stalking Horse Bidder or any other Qualified Bidder with copies of any Initial Bids upon its receipt of same.

8. Non-Conforming Bids. Any entity that submits an Initial Bid that fails to be a timely, conforming Initial Bid, as set forth above, as determined by the Debtor in its reasonable discretion shall be disqualified from bidding for the Sale Assets at the Auction. Any entity that intends to submit a Credit Bid that fails to timely indicate such intention to Credit Bid by the Bid Deadline, as determined by the Debtor in its reasonable discretion, shall also be disqualified from bidding the for the Sale Assets at the Auction. At least one (1) business day prior to the Auction Date, the Debtor

through SC&H serve upon such Bidder a statement explaining the grounds for disqualification ("Statement of Disqualification"). The Debtor, in its reasonable discretion, may allow a Bidder to cure any defect or deficiency in its Initial Bid in order to render the Initial Bid conforming at any time prior to the start of the Auction.

9. Auction Procedures. In the event that the Debtor receives, in addition to the Stalking Horse Bidder, one or more timely, conforming Initial Bids (including any intention to Credit Bid) (each person who has submitted such a timely, conforming Initial Bid (including any intention to Credit Bid) shall be referred to herein as a "Qualified Bidder," and such Initial Bid a "Qualified Bid;"), the Debtor, its counsel and SC&H shall conduct the Auction in which only Qualified Bidders (together with such Qualified Bidder's advisors) may participate. The Auction shall be held on December 11, 2024 (the "Auction Date"), commencing at 10:00 a.m. Pacific Time, remotely (or such other location as may be determined by the Debtor and communicated to all Qualified Bidders at least one (1) business day before the Auction), and shall be governed by the following procedures:

a. All Bidders shall be deemed to have consented to the core jurisdiction of the Court, to have consented to the Constitutional authority of the Court to enter a final judgment, and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Sale Assets.

b. Unless the Debtor receives, on or before the Bid Deadline, a Qualified Bid in addition to the Stalking Horse Bidder, the Debtor shall cancel the Auction and declare the Stalking Horse Bidder as the prevailing bidder. The Debtor shall not extend the Bid Deadline, the Auction (if applicable) and/or modify the Bid Procedures without the written consent of the Stalking Horse Bidder.

c. Bidding will commence at an amount of the highest or otherwise best conforming Initial Bid by a Qualified Bidder as determined by the Debtor in its reasonable discretion. The Debtor will conduct the bidding process sequentially or concurrently as it deems appropriate and in the best interests of the estate. The Stalking Horse Bidder shall utilized the Break-Up Fee as part of any subsequent bid made by the Stalking Horse Bidder, which Break-Up Fee will be treated as equal to the cash dollar amount of the Break-Up Fee if such subsequent bid by the Stalking Horse Bidder is accepted as the Prevailing Bidder. d. Terms of Overbids. An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of (i) the opening bid (which, for the avoidance of doubt, shall be at least equal to the Baseline Bid, the "Opening Bid"), and (ii) the then highest and/or best Overbid at the

beginning of each subsequent round of bidding (the "Round Leading Bid"). To submit an Overbid, in any round of the Auction, a Qualified Bidder must comply with the following conditions:

(i) Minimum Overbid Increment. Any Overbid made after the Opening Bid shall be made in increments of at least $250,000.

(ii) Remaining terms are the same as for Qualified Bids. Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until the closing date.

To the extent not previously provided (which shall be determined by the Debtor), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

(iii) Announcing Overbids. At the start of each round of bidding, the Debtor shall announce the material terms of the Round Leading Bid, the basis for calculating the total consideration offered in such Overbid, and the resulting benefit to the Debtor.

(iv) Consideration of Overbids. The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: (A) facilitate discussions between the Seller and individual Qualified Bidders; (B) allow individual Qualified Bidders to consider how they wish to proceed; (C) consider and determine the current highest and/or best Overbid at any given time during the Auction; and (D) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as it may require, in its reasonable business judgment, that the Qualified Bidder has obtained all required internal corporate approvals, has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(v) To remain eligible to participate in the Auction, (i) each Qualified Bidder must submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding Round Leading Bid and (ii) to the extent a Qualified Bidder fails to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding, such Qualified Bidder will be disqualified from continuing to participate in the Auction; provided the Debtor, in its reasonable business judgment, may permit a bidder that has been disqualified to take part in the Auction solely to the extent a Qualified Bidder that has not been disqualified has agreed (after

receiving express permission from the Debtor) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source.

e. Each Qualified Bidder should be prepared to make its best and final offer at the Auction. The Debtor reserves all rights to continue or recess the Auction.

f. Upon conclusion of the Auction, the Debtor shall designate the highest or otherwise best bidder with respect to individual lots or a combination of lots comprising the Sale Assets (each, a "<u>Prevailing Bidder</u>"), and the next highest or otherwise best bidder after the Prevailing Bidder with respect to individual lots or a combination of lots comprising the Sale Assets (each, a "<u>Back-up Bidder</u>").

g. The Debtor shall file a Report of Auction upon completion of the Auction, designating the Prevailing Bidder(s) and the Back-up Bidder(s), if applicable, setting forth in each instance the amount of the respective Bids.

11. <u>Back-up Bidder</u>. Any objection to the designation of the Back-up Bidder(s) shall be raised at the Sale Hearing and decided by the Court. If, for any reason, a Prevailing Bidder is unable or unwilling to timely perform its obligations under the Transaction Agreement and the Bidding Procedures, the Debtor, in the exercise of its business judgment, shall be authorized, but not required, to sell the Sale Assets to the designated Back-up Bidder without further notice or a hearing. The Back-up Bidder's bid shall remain open and binding until the sale to the Prevailing Bidder closes or, if the Prevailing Bidder is unable or unwilling to close, until the sale to the Back-up Bidder closes.

12. <u>Objection.</u> Any objection to the Sale Motion, a Statement of Disqualification, the Auction, the designation of any Prevailing Bidder or any Back-up Bidder, or entry of the Sale Order (an "<u>Objection</u>") must be filed with the Court and served upon (i) The Debtor; (ii) the Stalking Horse Bidder; and (iii) any committee appointed in the Bankruptcy Case, in a manner such that the Objection is filed and received by such parties and the Court on or before the commencement of the Sale Hearing (the "<u>Objection Deadline</u>"). The Debtor and other parties-in-interest shall not be required to file responses to any Objection. The foregoing notwithstanding, counterparties to executory contracts and unexpired leases may object to the assumption and assignment of such executory contracts and unexpired leases on the basis of lack of adequate assurance of future performance (but no other basis) by raising such objection at the Sale Hearing.

13. <u>Sale Hearing</u>.  The final hearing to approve the Prevailing Bidder and the Back-up Bidder (the "<u>Sale Hearing</u>") shall be held before the Court at 11:30 a.m. Pacific Time, on <u>December 12, 2024</u>, in Courtroom 10 at the San Jose Division of the United States Bankruptcy Court for the Northern District of California.  The Prevailing Bidder(s) and the Back-up Bidder(s), if designated, shall appear remotely at the Sale Hearing, in person or through a duly authorized representative and not solely through counsel.

14. <u>Business Judgment</u>.  The Debtor may recommend a sale to any Qualified Bidder pursuant to a bid which the Debtor determines, exercising reasonable business judgment, to be in the best interests of the bankruptcy estate.  The Debtor may reject, at any time before the entry of an order of the Court approving a bid from a Qualified Bidder, any bid that is deemed inadequate or insufficient, not in substantial conformity with the Bankruptcy Code or these Bidding Procedures, or contrary to the best interests of the estate and its creditors.  In exercising business judgment as to which bid constitutes the highest or otherwise best bid, the Debtor may consider all factors which it may deem relevant, subject to the parties' right to object and raise any such issues with the Court.  Subject to the Stalking Horse Agreement, the Debtor also may modify these bidding procedures, exercising reasonable business judgment, if the Debtor determines such modification to be in the best interests of the bankruptcy estate.

15. <u>Disposition of Deposits</u>.  The Deposits will be held by the Debtor in a non-interest-bearing escrow or trust account and will not become property of the Debtor's estate. The Deposits will be retained by the Debtor, notwithstanding the Court's approval of any Sale, until no later than five (5) business days after the conclusion of the Auction, except for the Deposits of the Prevailing Bidder(s) and Backup Bidder(s). The deposits of the Prevailing Bidder(s) and the Back-up Bidder(s) shall be retained as earnest money to be used in the following ways:

a. The deposit of a Prevailing Bidder shall either be (i) applied at closing as a credit toward the purchase price of the Prevailing Bidder or, if the purchase price is paid in full at closing, returned to the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Prevailing Bidder, the deposit shall be retained by the Debtor as liquidated damages as provided in the Transaction Agreement, or (iii) in the event that the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Prevailing Bidder as provided in the Transaction Agreement.

b.  The deposit of a Back-up Bidder shall either be (i) returned to the Back-up Bidder upon the closing of the transaction with the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to close for any reason, applied at closing as a credit toward the purchase price of the Back-up Bidder, (iii) if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Back-up Bidder, retained by the Debtor as liquidated damages as provided in the Transaction Agreement, or (iv) if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Back-up Bidder as provided in the Transaction Agreement.

16. Closing Date.  Any closing of the sale of the Sale Assets to a Prevailing Bidder must occur as soon as practicable but in any event within fifteen (15) days of the date on which the Sale Order becomes a final, non-appealable order (or such date as the Debtor and Prevailing Bidder may mutually agree).  Any closing of the sale of the Sale Assets to a Back-up Bidder must occur within fifteen (15) days of the date on which the Debtor notifies the Back-up Bidder that the Prevailing Bidder has failed to timely close and that the Back-up Bidder has become the Prevailing Bidder (or such later date as the Debtor may agree).

17. Disclaimer.  By submitting an Initial Bid, each Bidder and Qualified Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Sellers or SC&H related to the Sale Assets ("Information"):

(a)     The Sale Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

(b)     The Information has been prepared:

i.      for informational purposes only;

ii.     from materials supplied by the Debtor, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

iii.    to assist Bidders and Qualified Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtor, SC&H and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "Representatives") have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information. In all cases, Bidders and Qualified Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Bidders and Qualified Bidders should engage legal counsel, accountants, engineers, and/or such

other professional advisors as Bidders and Qualified Bidders deem appropriate for evaluating the Assets.

(c) None of Bidders, Qualified Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d) Although the Debtor and SC&H have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Bidder's or Qualified Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtor and approved by the Court, the Debtor, SC&H or any of their respective Representatives:

i. have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Sale Assets or with respect to the accuracy, reliability or completeness of the Information;

ii. to the fullest extent permitted by law, shall have any liability whatsoever to Bidders, Qualified Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Bidder's, any Qualified Bidder's, or any of their Representative's reliance on the Information, (ii) Bidder's, Qualified Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtor, SC&H or any of their respective Representatives, or any errors or omissions in the Information;

iii. shall have any liability or responsibility for any decisions made by any Bidder, Qualified Bidder or any of their Representatives in reliance on any Information;

iv. will be under any obligation or duty (express or implied) to make available any Information to any Bidders, any Qualified Bidders, or any of their Representatives; and

v. will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e) No contract or agreement providing for any sale shall be deemed to exist between a Bidder or Qualified Bidder and the Debtor unless and until a Qualified Bidder and the Debtor execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Bidders and Qualified Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any Sale unless and until a Bidder

or Qualified Bidder and the Sellers shall have executed and delivered such agreement(s) authorized and approved by the Court. Subject to the Stalking Horse Agreement, the Debtor reserves the right, in its discretion, to reject any and all proposals made by any Bidder or Qualified Bidder with regard to a Sale, and to terminate discussions and negotiations with a Bidder or Qualified Bidder at any time. Subject to the terms of these Bidding Procedures and the Stalking Horse Agreement, the Debtor shall be free to establish and change any process or procedure with respect to a Sale as the Debtor in its sole discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a Sale with any other party without prior notice to any Bidder, Qualified Bidder or any other person).

 (f) The Debtor, SC&H and the Debtor's other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the Debtor which has been authorized and approved by the Court. Bidders and Qualified Bidders may rely only on the representations and warranties expressly set forth in such agreements authorized and approved by the Court.

# NOTICE OF DESIGNATION STALKING HORSE BIDDER, BID DEADLINE, AND AUCTION

*By order of the US Bankruptcy Court for the District of California, San Jose Division*
*Case# 24-51678*

## Precision Swiss Products, LLC

Auction to be held on December 11, 2024

### SUMMARY TIMELINE:

| | |
|---|---|
| **Bid Deadline for Qualified Bids and Deposits:** | 4:00 p.m. (Pacific Time), December 5, 2024 |
| **Auction:** | 10:00 a.m. (Pacific Time), December 11, 2024 |
| **Sale Hearing:** | 11:30 a.m. (Pacific Time), December 12, 2024 |
| **Auction Location:** | TBD |
| **Closing:** | **Closing will take place as soon as practicable but in any event within fifteen (15) days of the date on which the Sale Order becomes a final, non-appealable order, with a target date of December 31, 2024** |

*Stalking Horse Bid:*

The Debtor has designated the following Stalking Horse Bid in connection with the sale of substantially all the assets of Precision Swiss Products, LLC:

1) $5,000,000 for substantially of the assets

SC&H Capital is soliciting bids to compete with the stalking horse bidder. Parties interested in submitting a Qualified Bid should submit a mark-up of the Stalking Horse asset purchase agreement, a copy of which will be available in the virtual data room when finalized, along with a deposit of 10% of the bid on or before the Bid Deadline. In addition, all bids must be accompanied by adequate evidence of ability to close the proposed transaction to be deemed a Qualified Bid. **Please note that a minimum Qualified Bid (topping bid) will be $5,600, 000.**

*A copy of the Sale Motion has been uploaded to the virtual data room and is available from SC&H Capital.*

For more information on how to become a Qualified Bidder, please contact the Debtor's Investment Banker:

Hank Waida
443-951-4849
hwaida@schgroup.com

EXHIBIT A

*** END OF ORDER ***

COURT SERVICE LIST

No service list required