CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE, P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: c.kuhner@kornfieldlaw.com

Proposed Attorneys for Precision Swiss Products, Inc., Debtor in Possession

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 24-51678 MEH |
| Precision Swiss Products, Inc, | Chapter 7 |
| | **MOTION FOR (1) APPROVAL OF ASSET PURCHASE AGREEMENT AND THE SALE OF ASSETS PURSUANT TO 11 U.S.C. SECTION 363; AND (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365** |
| Debtor. | |

Date: December 12, 2024
Time: 11:30 a.m.
Ctrm: 11
U.S. Bankruptcy Court
280 South First Street, 3rd Fl.
San Jose, CA 95113

Precision Swiss Products, Inc., debtor and debtor in possession in the above bankruptcy case (the "Debtor" or "Seller"), hereby moves for an order (1) approving the sale of bankruptcy estate property pursuant to the asset purchase agreement ("APA") between the Debtor and ERA Parent, LP d/b/a BTX Precision, a Delaware corporation or its designee/assignee ("BTX" or "Buyer"), a substantially final form of which is attached as **Exhibit A** to the Declaration of Norbert Kozar filed in support of this motion; (2) finding that the assets subject to the APA are being sold free and clear

of all claims, liens and interests under 11 U.S.C. Section 363(f); (3) approving the assumption and assignment of executory contracts; (4) authorizing the Debtor to take all actions necessary to implement the terms set forth therein; and (5) finding the Buyer is a good faith purchaser under 11 U.S.C. Section 363(m) (the "Motion").

This Motion is based on the Memorandum of Points and Authorities set forth herein, the Notice of Hearing, the Declarations of Nobert Kozar and Chris D. Kuhner filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion.

The grounds for the Motion are as follows:

## I.  FACTUAL BACKGROUND

On November 4, 2024, the Debtor filed a voluntary petition (the "Bankruptcy Case") for relief under Chapter 11 of the Bankruptcy Code 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

In the spring of 2024, the Debtor began discussing the possible sale of its business with BTX, a company operating in the same market space as the Debtor.  BTX showed interest in acquiring the Debtor, but no definitive acquisition agreement was executed, primarily due to the Debtor's over leveraged balance sheet and the number of unsecured and under secured creditors making any such transaction difficult, if not possible, outside of a chapter 11 bankruptcy.

On October 1, 2024, the Debtor retained SC&H Group ("SC&H") as its investment banker-financial adviser to advise the Debtor regarding the sale of the Debtor's business.  On October 31, 2024, the Debtor and BTX executed a letter of intent to acquire the Debtor's assets and business for $5,000,000 ("Purchase Price) subject to an overbid and auction process to be run through this bankruptcy on an expedited timeline of 45-60 days given, among other things, the Debtor's liquidity ("BTX LOI").  On November 8, 2024, the Court entered an Order Granting Motion to Approve Overbid and Auction Procedures and Break Up Fees and Expense Reimbursement [Docket #30] ("Sale Procedures Order") which sets forth the bid and auction procedures ("Sale Process"). A copy of the Sale Procedures Order containing the approved Sale Process is attached hereto as **Exhibit A**.

As of the filing of this Motion, the Debtor and the Buyer have negotiated a substantially final form APA, which the Debtors and the Buyer intend to finalize and execute in short order. Pursuant

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

to the APA and Sale Procedures Order, the Debtor will market the assets of the Debtor ("Purchased Assets") to potential buyers with an auction to be held on December 11, 2024, and a hearing on this Motion on December 12, 2024 ("Sale Hearing"). The Sale Process is detailed in the Sale Procedures Order and requires any Qualifying Offers to be received by 10:00 a.m. (Pacific) on December 5, 2024.

Pursuant to the Sale Procedures Order, Qualified Offers shall include, among other things, a bona fide, binding, and duly executed written offer(s) to purchase the Purchased Assets in bulk, or in lots, received on or before 10:00 a.m. (Pacific time), on or before December 5, 2024 ("Initial Bid Deadline"), which: (i) is in the form and substance substantially similar to the APA, excluding only provisions pertaining to the Bid Protection (defined in the APA) in favor of Buyer; (ii) is irrevocable until the conclusion of the Sale Hearing, (iii) is accompanied by a cashiers' check or wire transfer in the amount of $500,000.00 to be held by the Seller in escrow; (iv) is accompanied by such evidence reasonably acceptable to Seller, after consultation with SC&H, demonstrating the proposed bidder's ability to close the proposed transaction. All Qualifying Offers must disclose the material terms and conditions of any contemplated employment or consulting agreement with any former or current insider of Seller.[1]

A Qualifying Offer must also not be less than an amount equal to the Purchase Price plus the $150,000 break-up fee ("Break Up Fee") plus the expense reimbursement up to $200,000, plus Two Hundred Fifty Thousand and 00/100 Dollars $250,000.00 (the "Initial Overbid Amount") and such Qualifying Offer(s) is on terms and conditions substantially similar to those of Buyer.

If there are timely Qualifying Offers are received, then there will be an action on 10:00am (Pacific) on December 11, 2024.

A condition of closing of this transaction under the APA is the Debtor obtaining bankruptcy court approval of the APA, a summary of the terms and conditions of the APA are set forth in the table below.[2]

---

[1] The summary of the Sale Procedures Order set forth herein is not intended to be a comprehensive restatement of all material terms of the Sale Procedures Order, which controls.
[2] The summary of the APA set forth herein is not intended to be a comprehensive restatement of all material terms of the APA, which controls.

Case: 24-51678   Doc# 42   Filed: 11/14/24   Entered: 11/14/24 15:40:03   Page 3 of 36

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

| | |
|---|---|
| Purchase Price | $5,000,000 |
| Deposit | $500,000 |
| Purchased Assets to be Sold under the APA | The Purchased Assets listed in Section 1.2(a) of the APA |
| Contracts to be Assumed | The contracts listed on Exhibit A in the APA |
| Break Up Fee/Expense Reimbursement | The Break Up Fee of $150,000 and Expense Reimbursement up to $200,000 shall be payable if (i) material breach of the APA by Seller; (ii) a Competing Bid approved by the Bankruptcy Court is consummated; (iii) the Seller transfers any part of the Purchased Assets other than to the Buyer (whether in or outside of the Chapter 11 Case); (iv) the Seller fails to consummate the Transaction on or before the Outside Date other than as a result of any delay directly caused by Buyer (other than in connection with the Seller failing to satisfy a Closing Condition and/or being in breach of the APA); or (v) the Seller makes or allows to be made to the Sale Procedures Order, except for changes agreed in writing by the Buyer (which consent shall not unreasonably withheld). |

## II.     ARGUMENT

### A.     This Court Should Approve the Asset Purchase Agreement.

Section 363(b) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure authorize a debtor to sell assets of the estate other than in the ordinary course of business, after notice and a hearing. See, e.g. *In re Quintex Entertainment, Inc., et al.*, 950 F. 2d 1492, 1495 (9th Cir. 1991). Generally, there must be some articulated business justification before the Court may order such a disposition under Section 363(b). *In re Lionel Corp.*, 722 F. 2d 1063, 1070 (2nd Cir. 1983). With respect to a proposed asset sale, "[A]ll sales not in the ordinary course of business may be by private sale or public auction" F.R.B.P. 6004(f)(1). In assessing the prudence of a Section 363 sale, courts have examined (i) whether the proposed transaction has a valid business justification

Case: 24-51678    Doc# 42    Filed: 11/14/24    Entered: 11/14/24 15:40:03    Page 4 of 36

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

or good business reason, (ii) whether the sale is the result of good faith negotiations and (iii) whether the proposed purchase price is fair and reasonable. See e.g., *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P.*, (In re 240 North Brand Partners, Ltd.), 200 B.R. 653, 659 (9th Cir. BAP 1996).

### 1. The Proposed Sale to the Buyer is a Proper Exercise of the Debtor's Business Judgment.

Based on the facts of this case, the proposed sale to the Buyer for $5,000,000 is clearly within the business judgment of the Debtor. The Debtor and BTX entered into the BTX LOI agreeing to the Purchase Price subject to overbid. As set forth below, the Debtor believes the Sales Process will result in the highest and best offer for the Purchased Assets and establish the factual basis for this Court to find that the Debtor is properly exercising its business judgment.

### 2. The Proposed Sale to the Buyer is the Result of Good Faith Negotiations.

The Debtor and the Buyers have negotiated in good faith in entering the BTX and the APA as an arms length transaction. Furthermore, the Sale Process provides an open and transparent marketing process and will welcome all potential buyers to make an offer to purchase the Purchased Assets. The Sale Process provides for an opportunity under the circumstances to obtain the best deal for the bankruptcy estate and ensure that there is no bid rigging or improper preference shown to any potential buyer(s).

Any required declarations of the representative(s) of the Buyer's or any other buyer(s) will be filed prior to the Sale Hearing in order for this Court to make a finding that the Buyers are good faith purchasers under 11 U.S.C Section 363(m).

### 3. The $5,000,000 Purchase Price is Fair and Reasonable.

The Purchase Process is fair and reasonable. First and foremost, the Buyers were the only entity offering to purchase the Purchased Assets and to agree as a stalking horse bidder. As set forth above, the Sale Process will result in the highest and best offer for the Purchased Assets under the circumstances of this Bankruptcy Case. Although the time frame of the Sale Process is expedited, due to the "melting ice cube" financial situation facing the Debtor, the Sale Process is the only practicable option. Although it will be done in a short time frame, the Sale Process provides for an

extensive marketing campaign to potential bidders of the Purchased Assets. The Sale Process will not only test and justify the stalking horse purchase price based on the market, the Sale Process provides an opportunity for a competitive bidding process and hopefully results in an increase to the ultimate purchase price for the benefit of all stakeholders.

> **B.** **The Sale of the Assets Subject to the APA Should Be Sold Free and Clear of All Liens, Claims and Interest Under 11 U.S.C. Section 363(f).**

11 U.S.C. Section 363(f) provides as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met). Furthermore, it is well established that a bankruptcy court has the power, pursuant to section 363(f) of the Bankruptcy Code, to approve the sale of a debtor's assets free and clear of any claims against the debtor. *In re TWA Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (holding that successor liability claims are "interests in property" within the meaning of §363(f)); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (same).

The Debtor submits that the sale of the Purchased Assets free and clear of liens, claims, interests and encumbrances will satisfy the requirements of section 363(f) of the Bankruptcy Code. Below is a list of the secured creditors who have purported security interests in the Purchased Assets and the Debtor's basis for selling free and clear of liens:

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

A. Gateway Acceptance Group: Consent to Sale (Section 363(f)(2); Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

B. United States Small Business Administration: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

C. Webfunder: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

D. Dover Capital LLC: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale)

E. Fox Business Funding: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale)

F. LG Funder: Consents to Sale (Section 363(f)(2)Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section

1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

G. Santa Clara County Tax Collector: Consents to Sale (Section 363(f)(2); Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

H. UFS West: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale)

I. M&D Capital NY LLC: Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale)

J. All Equipment Lenders/Lessors (see **Exhibit B** attached hereto): Consents to Sale (Section 363(f)(2);Applicable Nonbankruptcy Law Permits Sale Free and Clear (Section 363(f)(1); or Section 363(f)(5) because, pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code, the secured party could be compelled to accept payment in satisfaction of its lien where, as here, the net proceeds of the sale of the Purchased Assets attach to the proceeds of sale).

As set forth in the certificate of service, the Debtor has provided notice of the Motion to all secured and unsecured creditors, parties to executory contracts and unexpired leases, and any individual or entities who may have an interest or claim in the Purchased Assets.

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

Based on the foregoing, the sale of the Purchased Assets should be free and clear of all claims, liens and interest pursuant to 11 U.S.C Sec. 363(f).

### C. The Court Should Grant the Assumption and Assignment of the Executory Contracts

11 U.S.C. § 365(a) provides that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365 allows a debtor-in-possession to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not. *See, e.g., Cinicola v. Scharffenberger*, 248 F.3d 110 (3d Cir. 2001); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 117 (Bankr. D. Del. 2001) ("[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (citation omitted).

Courts apply the "business judgment" standard in evaluating a debtor's decision to assume or reject an executory contract. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing courts' use of the business judgment standard in evaluating whether rejection of executory contracts or leases is appropriate); *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (finding that bankruptcy courts apply the business judgment rule to evaluate a trustee's rejection decision); *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (same).

Bankruptcy courts should presume that a debtor-in-possession "acted prudently . . ., in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Id.*, 476 F.3d at 670 (citing *Navellier v. Sletten*, 262 F.3d 923, 946 n.12 (9th Cir. 2001)). Courts typically defer to a debtor-in-possession's business judgment in assuming or rejecting a contract unless that decision is so "'manifestly unreasonable that it could not be based on sound business

**KORNFIELD** NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

judgment, but only on bad faith, or whim or caprice.'" *Id.* (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

Further, the "business judgment" standard merely requires the debtors to establish that the requested assumption will benefit the estate. *See Official Creditors Comm. v. X10 Wireless Tech., Inc. (In re X10 Wireless Tech., Inc.)*, No. WW-04-1328-PST, 2005 WL 6960205, at \*3 (B.A.P. 9th Cir. Apr. 5, 2005) ("In exercising . . . business judgment, the trustee or debtor in possession must demonstrate that assumption will benefit the estate.") (citing *In re Crystalin, L.L.C.*, 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003)).

Pursuant to the APA, on or before the Initial Bid Deadline, the Buyer shall provide the Debtor a list of unexpired leases and executory contracts Buyer desires the Debtor to assume and assign to Buyer, subject to approval by the Bankruptcy Court. The Debtor shall assume and assign to Buyer each of the Assumed Contracts that is capable of being assumed and assigned, and the Debtor shall assume and perform and discharge the Cure Costs (if any) under the Assumed Contracts pursuant to the entry of an order by the Bankruptcy Court, approving the assumption and assignment of the Assumed Contracts. The Debtor shall bear all costs necessary to remedy any existing defaults under the Assumed Contracts.

The Buyer may, from time to time prior to a date which is five (5) Business Days prior to the Closing Date, and in its sole discretion, upon written notice to the Debtor, amend or revise the schedule of Assumed Contracts to eliminate any Assumed Contract therefrom or to add any Contract thereto, so long as, in each case, the Debtor is a party or third party beneficiary to such Contract and each such Contract relates to the Purchased Assets. If any Contract is added to the list of Assumed Contracts, then the Debtor shall take such steps as are reasonably necessary to cause such Contract to be assumed and assigned to Buyer as promptly as possible at or following the Closing.

Moreover, the Debtor will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Buyer, its experience in the industry, and its willingness and ability to perform under the proposed Assumed Contract to be assumed and assigned to it.

Because of the need to close any transactions as quickly as possible in order to maximize value, the Debtor proposes the following procedures for assuming and assigning executory contracts and unexpired leases:

- Within two (2) business days after the Initial Bid Deadline, the Debtor will file a notice (the "**Assumption Notice**") with the Court and serve same, by facsimile, overnight delivery, or any other form of notice authorized by any non-debtor party (including email) to any executory contract or unexpired lease whose assumption and assignment any Qualified Bidder has identified as a condition to closing (collectively, the "**Executory Contracts/Leases**," and each, an "**Executory Contract/Lease**"). The Assumption Notice shall be substantially in the form attached as **Exhibit [ ]** thereto and made a part hereof and shall (i) state the cure amounts that the Debtor believes are necessary to assume and assign such Executory Contracts/Leases pursuant to Section 365 of the Code (the "**Cure Amount(s)**"), and (ii) notify the non-debtor party that such party's Executory Contract/Lease may be assumed and assigned to a purchaser of the Purchased Assets to be identified at the conclusion of the Auction, subject to the Sale Hearing (the "**Proposed Assumption/Assignment**"). In addition, if the Debtor identifies additional Executory Contracts/Leases that might be assumed by the Debtor and assigned to the Prevailing Bidder not set forth in the original Assumption Notice, the Debtor shall promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to the applicable counterparties to such additional Executory Contracts/Leases.

- The deadline for a non-debtor party to an Executory Contract/Lease (a "Contract/Lease Counterparty") to file and serve an objection (a "Cure Amount/Assignment Objection") to the Cure Amount or Proposed Assumption/Assignment of such Executory Contract/Lease shall be the later of (i) 5:00 prevailing Central time) on [   ] or (ii) to the extent applicable, five (5) days after service of the relevant Supplemental Assumption Notice (the later of these being the "Cure Amount/Assignment Objection Deadline").

- Cure Amount/Assignment Objections must be both (i) filed with the clerk of the Bankruptcy Court and (ii) served upon all Noticed Parties on or before the Cure Amount/Assignment Objection Deadline. Service of a Cure Amount/Assignment Objection Deadline is effective only upon actual receipt by the party served.

- Unless a Contract/Lease Counterparty timely files and serves a Cure Amount/Assignment Objection as provided herein, then such Contract/Lease Counterparty:

  - (i) will be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract/Lease, and the Debtor shall be entitled to rely solely upon the Cure Amount;

  - (ii) Will be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract/Lease, and will be forever barred and estopped from asserting or claiming against the Debtor, the Prevailing Bidder and/or the Back-Up Bidder, or any other assignee of the relevant Executory Contract/Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract/Lease.

Motion for (1) Approval of Asset Purchase Agreement;
(2) Assumption and Assignment of Executory Contracts

-11-

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

Notwithstanding the foregoing, each such non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract/Lease based solely on the issue of whether the Prevailing Bidder or Back-Up Bidder, as the case may be, can provide adequate assurance of future performance as required by Section 365 of the Code ("Adequate Assurance Objection(s)");

- If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with the appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtor is authorized, but not directed, in consultation with the Constituent Parties, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting party to any Executory Contract/Lease without further order of the Court. In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing. In addition, the Court shall resolve any Adequate Assurance Objections at the Sale Hearing.

### D. The Sale Process Satisfies the Requirements of Code Section 363(m) for a Sale Made in Good Faith

Section 363(m) reflects that the Code strongly favors finality of sale orders, and the protection of good-faith purchasers maximizes the value of the assets for sale, which benefits both debtors and creditors. See *Hower v. Molding Sys. Eng'g Corp.,* 445 F.3d 935, 938 (7th Cir. 2006).

"The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986) (quoting I*n re Rock Indus. Mach. Corp.*, 572 F.2d 1995, 1198 (7th Cir. 1978))

### E. Compliance With the Guidelines for Early Disposition of Substantially All Assets

The Declarations of Chris D. Kuhner and Norbert Kozar ("Sale Declarations") filed in support hereof set forth the facts required under the *Guidelines For Early Disposition Of Assets In Chapter 11 Cases, Pre-Packaged Plans, The Sale Of Substantially All Assets Under Section 363*("Guidelines")*.*

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

Furthermore, the Debtor will (1) include the required information contained in the Sale Declarations in the notice to creditors and other parties in interest; (2) file a proposed order approving the Motion to the Court within twenty four (24) hours prior to the Sale Hearing; and (3) submit any additional evidence required for the Court to make a finding that any Buyer(s) are good faith purchasers under 11 U.S.C. Sec. 363(m). With the approved Sales Procedures Order, the Debtor will comply with the requirements of have the Purchased Assets subject to competing bids at the Auction and proof of any non BTX buyer(s) financial ability to close.

### III. CONCLUSION

**WHEREFORE**, based upon the foregoing, the Debtor respectfully requests that the Court enter an order (1) approving the sale of the Purchased Assets pursuant to the APA; (2) finding that the Purchased Assets sold subject to the APA are being sold free and clear of all claims, liens and interests under 11 U.S.C. Section 363(f); (3) approving of the assumption and assignment of the Assumed Contracts; (4) authorizing the Debtor to take all actions necessary to implement the terms set forth in the APA; (5) finding the Buyer(s) are good faith purchasers under 11 U.S.C. Section 363(m); (6) waiver of the stay provisions of rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and (7) for such other and further relief as the Court shall deem just and proper.

Dated: November 14, 2024            Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.


By: /s/ Chris D. Kuhner
(Bar No. 173291)
Proposed Attorneys for Debtor in Possession

Case: 24-51678   Doc# 42   Filed: 11/14/24   Entered: 11/14/24 15:40:03   Page 13 of 36

# DECLARATION OF SERVICE

I am at least 18 years of age and not a party to the within-entitled action. I am employed in the City of Oakland in the County of Alameda where the mailing took place. My business address is 1970 Broadway, Suite 600, Oakland, California. On November 14, 2024, I caused to be served a copy of the following documents by electronic service.

**NOTICE OF SALE ON HEARING ON MOTION FOR (1) APPROVAL OF ASSET PURCHASE AGREEMENT SALE OF ASSETS PURSUANT TO 11 U.S.C. SECTION 363; AND (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365;**

**MOTION FOR (1) APPROVAL OF ASSET PURCHASE AGREEMENT SALE OF ASSETS PURSUANT TO 11 U.S.C. SECTION 363; AND (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365;**

**DECLARATION OF CHRIS D. KUHNER IN SUPPORT OF MOTION FOR (1) APPROVAL OF ASSET PURCHASE AGREEMENT SALE OF ASSETS PURSUANT TO 11 U.S.C. SECTION 363; AND (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365;**

**DECLARATION OF NORBERT KOZAR IN SUPPORT OF MOTION FOR (1) APPROVAL OF ASSET PURCHASE AGREEMENT SALE OF ASSETS PURSUANT TO 11 U.S.C. SECTION 363; AND (2) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. SECTION 365**

to the name(s) addressed below:

KORNFIELD
NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

Case: 24-51678   Doc# 42   Filed: 11/14/24   Entered: 11/14/24 15:40:03   Page 14 of 36

_Via-Electronic Service_
_U.S. Trustee_
Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

_Via-ECF_
Mike Chow
DOJ-Ust
450 Golden Gate Ave.
5th Floor, Ste 05-0153
San Francisco, CA 94102

_Via-ECF_
Raffi Khatchadourian
Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

_Via-ECF_
Michael T. Pyle
U.S. Attorney's Office/NDCA
150 Almaden Blvd. #900
San Jose, CA 95113

_Via-ECF_
X3 Dynamic Machining Inc.
Seth W. Wiener
Law Offices of Teresa T.H. Nguyen
2114 Senter Rd. #5
San Jose, CA 95112

_Via-ECF_
Kathryn M.S. Catherwood
Gordon Rees Scully Mansukhani
101 W. Broadway, Ste. 2000
San Diego, CA 92101

___ By enclosing the above documents in an envelope and placing the envelope for collection and mailing on the date and at the place mentioned above following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is place for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. (CCP §§ 1013, 1013(a), 2015.5).

___ By emailing said document(s) to persons listed below to their email addresses also listed above in Adobe Acrobat, Word or WordPerfect.

___ By facsimile transmission as agreed by the parties from a facsimile transmission machine, whose telephone number is (510) 273-8869. For the same party at the facsimile number referenced above. The above document(s) were transmitted to a facsimile machine maintained by the person on whom it is served. The transmission was reported as complete and without error and the transmission report was properly issued by the sending fax machine. A copy of the transmission report is hereby attached. (CRC §2.306, CCP §§1013(e), 2015.5).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 14, 2024, at Danville, California.

/s/ Gail A. Michael

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

# EXHIBIT A

1  CHRIS D. KUHNER, ESQ.
   (Bar No. 173291)
2  **KORNFIELD, NYBERG, BENDES,**
   **KUHNER & LITTLE P.C.**
3  1970 Broadway, Suite 600
   Oakland, California  94612
4  Telephone:  (510) 763-1000
   Facsimile:  (510) 273-8669
5  Email: c.kuhner@kornfieldlaw.com

**The following constitutes the order of the Court.**
**Signed: November 8, 2024**

*M. Elaine Hammond*

6  Proposed Attorneys for Debtor-In-Possession

**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

7

8

9

10                    UNITED STATES BANKRUPTCY COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  In re                                    Case No. 24-51678 MEH

14  PRECISION SWISS PRODUCTS, INC.,          Chapter 11

15

16                                           **ORDER GRANTING DEBTOR'S**
                                             **MOTION TO APPROVE**
17                                           **OVERBID AND AUCTION**
                                             **PROCEDURES AND BREAKUP**
18                          Debtor.          **FEES AND EXPENSE**
                                             **REIMBURSEMENT**
19
                                             Date:  November 7, 2024
20                                           Time:  10:00 a.m. Pacific Time
                                             Ctrm:  11
21                                                   U.S. Bankruptcy Court
22                                                   280 South First Street, 3rd Fl.
                                                     San Jose, California 95113
23                                                   Videoconference via Zoom

24

25

26

27

28

KORNFIELD | NYBERG, BENDES,
            KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

Upon the *Motion for Approval of Overbid and Auction Procedures and Breakup Fees and Expense Reimbursement* filed November 4, 2024 [Docket No. 7] (the "Motion")[1] Precision Swiss Products, Inc, debtor in possession in the above referenced bankruptcy case (the "Debtor") seeking an order approving, among other things, the *Overbid and Auction Procedures* and *Overbid Notice of Opportunity to Overbid and Auction* attached as **Exhibit A** to the Motion, including bid protections in favor of Debtor's assets to ERA Parent, LP d/b/a BTX Precision, a Delaware corporation or its designee/assignee ("Stalking Horse Bidder"), all as more fully set forth in the Motion; the Motion having come for hearing before the Court; notice of the hearing on the Motion having been properly given; the Court having considered the Motion, all objections both filed and presented at the hearing, as well as the arguments of counsel present; and upon record of the hearing on the Motion and of this case; and the relief requested in the Motion being in the best interests of the Debtor, its estate, and other parties in interest; and after due deliberation and sufficient cause appear therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.       Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

B.       The Overbid and Auction Procedures, a copy of which is attached to the Motion, are fair, reasonable and appropriate, and are reasonably designed to maximize the value to be achieved for the estate. Without limiting the foregoing, establishing the ability to (i) offer the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement; and (ii) provide other appropriate and customary protections to the Stalking Horse Bidder as set forth in the Motion and Overbid and Auction Procedures to incentivize bids is a reasonable exercise of the Debtors' business judgment.

---

[1] Capitalized terms used and not defined herein have the meaning ascribed to such terms in the Motion or the Overbid and Auction Procedures, as applicable.

C. The Overbid and Auction Procedures for the assumption and assignment of executory contracts and unexpired leases are fair, reasonable, and appropriate, and comply with section 365 of the Bankruptcy Code.

D. The Sale process timeline and related noticing procedures set forth in the Overbid and Auction Procedures are appropriate in the circumstances of these cases and are, together with the Overbid Notice of Opportunity to Overbid and Auction, reasonably calculated to provide all interested parties with adequate notice of the proposed Sale and related milestones and deadlines and are approved pursuant to sections 102(1) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006(c)(1).

E. The entry of this Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

F. Good and sufficient business reasons exist for the Court to authorize the Debtor to enter into the Stalking Horse Agreement, to designate the Stalking Horse Bidder as the stalking horse bidder, and to approve the Bid Protections set forth in the Stalking Horse Agreement, including:

- The Stalking Horse Bidder would not have entered into the BTX LOI, the Stalking Horse Agreement or agreed to act as the Stalking Horse Bidder without the Bid Protections negotiated as part of the Stalking Horse Agreement.

- The Bid Protections are the product of negotiations between the Debtor and the Stalking Horse Bidder conducted in good faith and at arm's length.

- The Bid Protections are actual and necessary costs and expenses of preserving the Debtor's estate and commensurate to the real and substantial benefit conferred upon the Debtor's estate by having the Stalking Horse Bidder; and

- The Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale transaction under the Stalking Horse Agreement, and the substantial efforts that have and will be expended by the Stalking Horse Bidder notwithstanding that the proposed Sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Sale Assets will be received.

KORNFIELD NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600  Oakland, California 94612

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. All objections to the Motion or the relief provided herein including, but not limited to, the *United States Trustee's Omnibus Opposition to Debtors' Emergency First Day Motions and Reservation of Rights* (Docket No. 17), that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Overbid and Auction Procedures is hereby incorporated as if fully set forth herein and approved. The Overbid Notice of Opportunity to Overbid and Auction is hereby incorporated as if fully set forth herein and approved.

4. **Approval of Bid Protections**:

- Pursuant to the Stalking Horse Agreement, the Debtor has agreed to pay to the Stalking Horse Bidder a break-up fee in an amount equal to (a) $150,000 (the "Break-Up Fee") plus (b) the amount of the reasonable, out-of-pocked and documented expenses the Stalking Horse Bidder incurred in connection with the Sale and related matters up to an aggregate amount of $200,000 (such expense reimbursement, the "Expense Reimbursement Amount" and, together with the Break-Up Fee, the "Bid Protections").

- The Bid Protections are hereby approved, and the Debtor is authorized and directed to promptly pay, as they become due pursuant to the terms of the Stalking Horse Agreement, any amounts owed to the Stalking Horse Bidder on account of the Bid Protections in accordance with the Stalking Horse Agreement.

- The obligation of the Debtor to pay the Bid Protections in accordance with the Stalking Horse Agreement shall be entitled to superpriority administrative expense status against the estate pursuant to Sections 503 and 507 of the Bankruptcy Code. Notwithstanding anything contained in any order approving the use of cash collateral or debtor-in-possession financing to the contrary, the Debtor's obligation to pay the Bid Protections to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement shall be carved out from any of the collateral securing the Debtor's pre- or post-petition secured lenders.

5. The Stalking Horse Agreement is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder, for all purposes and requirements pursuant to the Overbid and Auction Procedures.

**KORNFIELD** NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

6. Any extension of the deadlines with respect to the Sale as set forth in the Overbid and Auction Procedures shall be in accordance with the Overbid and Auction Procedures and the Stalking Horse Agreement.

7. Absent further order of the Court, no person or entity (other than the Stalking Horse Bidder) shall be entitled to any expense reimbursement or break-up fee, "topping," termination, or other similar fee or payment by the Debtor for submitting a bid for the Sale Assets, or in any way participating in an Auction or the Debtor's Sale process.

8. A reasonable opportunity to object or be heard regarding the relief granted herein has been afforded to all parties in interest in this chapter 11 case.

9. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) and 6006(d), or any applicable provisions of the Bankruptcy Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

10. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order, including as stated on the record of the hearing.

Approved as to form

Dated: November 8, 2024

By: /s/ Mike Chow
_____
Mike Chow, Trial Attorney
Attorneys for United States Trustee


Vedder Price

Dated: November 8, 2024

By: /s/ William W. Thorsness
_____
William W. Thorsness
Attorneys for ERA Parent, LP d/b/a BTX Precision, a Delaware corporation or its designee/assignee

Case 24-55678   Doc# 342   Filed 11/08/24   Entered 11/08/24 15:40:03   Page 52 of 18

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.
1970 Broadway, Suite 600   Oakland, California 94612

BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") have been approved and authorized by order (the "Sale Procedures Order") of the United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Court") in the Chapter 11 case (the "Case") of Precision Swiss Products, LLC (the "Debtor"). These procedures shall govern the proposed sales (each, a "Sale") of the Sale Assets (as defined below), including any auction (the "Auction") conducted in connection therewith, pursuant to the Debtor's motion for an order authorizing the Sale and granting related relief (the "Sale Motion").

Sale Assets. The assets to be sold pursuant to these Bidding Procedures (the "Sale Assets") shall consist of substantially all of the Debtor's tangible and intangible personal property used in its medical device, aerospace/defense and semi-conductor component manufacturing operations as defined on the attached Schedule A.  The Sale Assets do not include the Excluded Assets (as defined below) owned by the Debtor.  The Sale Assets may be sold in individual lots or a combination of lots as determined by the Debtor.  The Sale Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent permitted under Section 363 of the Bankruptcy Code, with all liens transferred to the proceeds of sale.

1. Excluded Assets.  Specifically excluded from the Sale Assets are (i) cash now or subsequently held by the Debtor in bank accounts on behalf of the bankruptcy estate, (ii) the purchase price to be delivered to the Debtor in connection with any approved sale of the Sale Assets, (iii) notes receivable owed to the Debtor from insiders, including without limitation, officers, directors and/or shareholders of the Debtor, (iv) the Debtor's books and records (to the extent not related to the Sale Assets), (v) insurance policies or the proceeds thereof, (vi) with the exception of any claims or causes of action related to the Sale Assets, any claims or causes of action which may be asserted by or on  behalf of the Debtor against any party, including but not limited to claims or causes of action under Bankruptcy Code §§ 544, 547, 548, 549, 550 and 553, and (vii) any assets that are expressly excluded by the Debtor from the Sale (collectively, the "Excluded Assets").

2. Diligence by Prospective Bidders.  The Debtor's investment banker, SC&H Group, Inc. ("SC&H"), will assist the Debtor in connection with any Sale of the Sale Assets.   The Debtor, by and through SC&H, shall give notice of the proposed Sale and these Bidding Procedures to prospective bidders, provide information to any such prospective bidder, and allow any such prospective bidder to conduct due diligence in connection with its consideration of a potential bid for the Sale Assets; provided, however, that any such prospective bidder desiring to conduct

due diligence shall execute a confidentiality agreement in a form acceptable to the Debtor in its reasonable discretion, which by its terms will inure to the benefit of the successful bidders, to the extent of confidential information relating to the Sale Assets acquired by such party.

3. <u>Bankruptcy Court Jurisdiction</u>.  In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Sellers, SC&H, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, the Sellers, Bidders and Qualified Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court with respect to these Bidding Procedures and the Sale, (b) bring any such action or proceeding in the Court with respect to these Bidding Procedures and the Sale, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding with respect to these Bidding Procedures and the Sale and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

5. <u>Stalking Horse Designation and Approved Bid Protections</u>.  The Debtor has designated, and the Sale Procedures Order has approved, ERA Parent, LP d/b/a BTX Precision as the stalking horse bidder ( "<u>Stalking Horse Bidder</u>") entitled to the Bid Protections (defined in the Stalking Horse Agreement) with respect to all of the Sale Assets, and have entered into a letter of intent ("<u>LOI</u>") outlining the terms of their bid. On or before November 11, 2024 (which may be extended by the Debtor and Stalking Horse Bidder), the Debtor will enter into a definitive agreement of sale with the Stalking Horse Bidder (the "<u>Stalking Horse Agreement</u>").   The Stalking Horse Bidder is a Qualified Bidder (defined below), and its Stalking Horse Agreement is a Qualified Bid (defined below) for purposes of these Bidding Procedures, the Auction and the Sale Hearing.

6. <u>Bid Requirements</u>.  Any entity that is interested in purchasing all or any portion of the Sale Assets ( "<u>Bidder</u>") must submit to SC&H a bid (an "<u>Initial Bid</u>") in conformance with this paragraph, in a manner such that the Initial Bid is received by SC&H no later than the Bid Deadline (as defined below). Every such Initial Bid must:

a. The Bidder must submit a written and signed irrevocable offer (i) confirming that the Bidder offers to consummate a sale transaction on the same terms and conditions

set forth in the Stalking Horse Agreement, except that the competing bid shall be in an amount at least equal to a Baseline Bid (defined below), (ii) confirming that the Initial Bid will remain irrevocable until the closing of the sale of the Sale Assets pursuant to the Bidder's Agreement (defined below), (iii) confirming that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, (iv) confirming that the Bidder has relied solely upon its own independent review and investigation and that it did not rely on any written or oral representation except as expressly provided in the Bidder's Agreement (defined below), and (v) confirming that in the event it submits a bid that is determined to be the second highest bid, such Bid shall serve as a Back-up Bidder (defined below).

b. Include an executed copy of a definitive Asset Purchase Agreement (the "Bidder's Agreement") specifying the Sale Assets to be purchased at closing and include a purchase price allocation.  The Bidder's Agreement shall include a marked copy against the Stalking Horse Agreement to show all changes requested by the Bidder.  The Bidder's Agreement also shall (i) specify any executory contracts or unexpired leases which are to be assumed by the Debtor and assigned to the Bidder at closing, and (ii) shall require the Bidder to pay any cure costs required to be paid in order for the Debtor to assume and assign such executory contracts and unexpired leases to the Bidder at closing.

c. Any Initial Bid must propose a purchase price that exceeds the value of the Stalking Horse Bid (which value shall be determined after accounting for anticipated closing date adjustments set forth in the Stalking Horse Agreement) by both an amount equal to the Bid Protections (as defined in the Stalking Horse Agreement)[1] plus a minimum overbid of $250,000 (a "Baseline Bid").

d. Be irrevocable, subject only to final approval of the Court, and not subject to further due diligence or conditional upon obtaining financing or any third-party approvals.

e. Be accompanied by admissible evidence establishing the Bidder's good faith, within the meaning of section 363(m) of the Bankruptcy Code.

f. Be accompanied by (i) financial statements or admissible evidence establishing that the Bidder is ready, willing, authorized, capable, and qualified financially, legally, and otherwise, of unconditionally performing all obligations under the Bidder's Agreement (a "Transaction Agreement"), in the event that it submits the

---

[1] For the avoidance of doubt, the Bid Protections approved in the Sale Procedures Order include the $150,000 Break-Up Fee, plus the $200,000 Expense Reimbursement.

prevailing bid at the Sale Hearing, and (ii) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Initial Bid without the consent of any entity that has not been obtained.

g. Be accompanied by a deposit equal to ten percent (10%) of the fixed purchase price under the Transaction Agreement (the "Deposit Amount") in the form of a wire transfer or cashier's check payable to the Debtor therein and to be held in a non-interest-bearing segregated account pending completion of the Auction, and subject to the provisions set forth below.

h. With the exception of the Stalking Horse Bid, not request or entitle the Bidder to any break-up fee, expense reimbursement, or similar type of payment.

i. An Initial Bid that is a "credit bid" under section 363(k) of the Bankruptcy Code (each, a "Credit Bid") shall be applied only to the Sale Assets in which the party submitting the Credit Bid holds a validly perfected security interest .

j. Each Initial Bid shall fully disclose the identity, including the ultimate controlling person(s) as well as the country of domicile and principal place of business, of each person or entity bidding for the Sale Assets or sponsoring, financing (including through the issuance of debt in connection with such bid), or otherwise participating in such bid (including through license or similar arrangement), and the complete terms of any such participation, including any agreement, arrangement, undertaking, or understanding in relation to such participation, and shall also disclose any past or present connections or agreements with the Debtor, any other known Bidder or Qualified Bidder, any officer or director of the foregoing, and any of the Debtor's pre- or post-petition secured lenders.

7. Bid Deadline. Any Initial Bid, including any intention to Credit Bid, must be delivered in writing so that it is actually received by SC&H by 4:00 p.m. Pacific Time, on December 5, 2024 (the "Bid Deadline"). SC&H shall provide the Stalking Horse Bidder or any other Qualified Bidder with copies of any Initial Bids upon its receipt of same.

8. Non-Conforming Bids. Any entity that submits an Initial Bid that fails to be a timely, conforming Initial Bid, as set forth above, as determined by the Debtor in its reasonable discretion shall be disqualified from bidding for the Sale Assets at the Auction. Any entity that intends to submit a Credit Bid that fails to timely indicate such intention to Credit Bid by the Bid Deadline, as determined by the Debtor in its reasonable discretion, shall also be disqualified from bidding the for the Sale Assets at the Auction. At least one (1) business day prior to the Auction Date, the Debtor

through SC&H serve upon such Bidder a statement explaining the grounds for disqualification ("Statement of Disqualification"). The Debtor, in its reasonable discretion, may allow a Bidder to cure any defect or deficiency in its Initial Bid in order to render the Initial Bid conforming at any time prior to the start of the Auction.

9. Auction Procedures. In the event that the Debtor receives, in addition to the Stalking Horse Bidder, one or more timely, conforming Initial Bids (including any intention to Credit Bid) (each person who has submitted such a timely, conforming Initial Bid (including any intention to Credit Bid) shall be referred to herein as a "Qualified Bidder," and such Initial Bid a "Qualified Bid;"), the Debtor, its counsel and SC&H shall conduct the Auction in which only Qualified Bidders (together with such Qualified Bidder's advisors) may participate. The Auction shall be held on December 11, 2024 (the "Auction Date"), commencing at 10:00 a.m. Pacific Time, remotely (or such other location as may be determined by the Debtor and communicated to all Qualified Bidders at least one (1) business day before the Auction), and shall be governed by the following procedures:

a. All Bidders shall be deemed to have consented to the core jurisdiction of the Court, to have consented to the Constitutional authority of the Court to enter a final judgment, and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Sale Assets.

b. Unless the Debtor receives, on or before the Bid Deadline, a Qualified Bid in addition to the Stalking Horse Bidder, the Debtor shall cancel the Auction and declare the Stalking Horse Bidder as the prevailing bidder. The Debtor shall not extend the Bid Deadline, the Auction (if applicable) and/or modify the Bid Procedures without the written consent of the Stalking Horse Bidder.

c. Bidding will commence at an amount of the highest or otherwise best conforming Initial Bid by a Qualified Bidder as determined by the Debtor in its reasonable discretion. The Debtor will conduct the bidding process sequentially or concurrently as it deems appropriate and in the best interests of the estate. The Stalking Horse Bidder shall utilized the Break-Up Fee as part of any subsequent bid made by the Stalking Horse Bidder, which Break-Up Fee will be treated as equal to the cash dollar amount of the Break-Up Fee if such subsequent bid by the Stalking Horse Bidder is accepted as the Prevailing Bidder. d. Terms of Overbids. An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of (i) the opening bid (which, for the avoidance of doubt, shall be at least equal to the Baseline Bid, the "Opening Bid"), and (ii) the then highest and/or best Overbid at the

beginning of each subsequent round of bidding (the "Round Leading Bid"). To submit an Overbid, in any round of the Auction, a Qualified Bidder must comply with the following conditions:

(i)     Minimum Overbid Increment. Any Overbid made after the Opening Bid shall be made in increments of at least $250,000.

(ii)    Remaining terms are the same as for Qualified Bids. Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until the closing date.

To the extent not previously provided (which shall be determined by the Debtor), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

(iii)   Announcing Overbids. At the start of each round of bidding, the Debtor shall announce the material terms of the Round Leading Bid, the basis for calculating the total consideration offered in such Overbid, and the resulting benefit to the Debtor.

(iv)    Consideration of Overbids. The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: (A) facilitate discussions between the Seller and individual Qualified Bidders; (B) allow individual Qualified Bidders to consider how they wish to proceed; (C) consider and determine the current highest and/or best Overbid at any given time during the Auction; and (D) give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as it may require, in its reasonable business judgment, that the Qualified Bidder has obtained all required internal corporate approvals, has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(v)     To remain eligible to participate in the Auction, (i) each Qualified Bidder must submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding Round Leading Bid and (ii) to the extent a Qualified Bidder fails to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding, such Qualified Bidder will be disqualified from continuing to participate in the Auction; provided the Debtor, in its reasonable business judgment, may permit a bidder that has been disqualified to take part in the Auction solely to the extent a Qualified Bidder that has not been disqualified has agreed (after

receiving express permission from the Debtor) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source.

e.  Each Qualified Bidder should be prepared to make its best and final offer at the Auction. The Debtor reserves all rights to continue or recess the Auction.

f.  Upon conclusion of the Auction, the Debtor shall designate the highest or otherwise best bidder with respect to individual lots or a combination of lots comprising the Sale Assets (each, a "Prevailing Bidder"), and the next highest or otherwise best bidder after the Prevailing Bidder with respect to individual lots or a combination of lots comprising the Sale Assets (each, a "Back-up Bidder").

g.  The Debtor shall file a Report of Auction upon completion of the Auction, designating the Prevailing Bidder(s) and the Back-up Bidder(s), if applicable, setting forth in each instance the amount of the respective Bids.

11. Back-up Bidder.  Any objection to the designation of the Back-up Bidder(s) shall be raised at the Sale Hearing and decided by the Court.  If, for any reason, a Prevailing Bidder is unable or unwilling to timely perform its obligations under the Transaction Agreement and the Bidding Procedures, the Debtor, in the exercise of its business judgment, shall be authorized, but not required, to sell the Sale Assets to the designated Back-up Bidder without further notice or a hearing.  The Back-up Bidder's bid shall remain open and binding until the sale to the Prevailing Bidder closes or, if the Prevailing Bidder is unable or unwilling to close, until the sale to the Back-up Bidder closes.

12. Objection.  Any objection to the Sale Motion, a Statement of Disqualification, the Auction, the designation of any Prevailing Bidder or any Back-up Bidder, or entry of the Sale Order (an "Objection") must be filed with the Court and served upon (i) The Debtor; (ii) the Stalking Horse Bidder; and (iii) any committee appointed in the Bankruptcy Case, in a manner such that the Objection is filed and received by such parties and the Court on or before the commencement of the Sale Hearing (the "Objection Deadline"). The Debtor and other parties-in-interest shall not be required to file responses to any Objection.  The foregoing notwithstanding, counterparties to executory contracts and unexpired leases may object to the assumption and assignment of such executory contracts and unexpired leases on the basis of lack of adequate assurance of future performance (but no other basis) by raising such objection at the Sale Hearing.

13. Sale Hearing. The final hearing to approve the Prevailing Bidder and the Back-up Bidder (the "Sale Hearing") shall be held before the Court at 11:30 a.m. Pacific Time, on December 12, 2024, in Courtroom 10 at the San Jose Division of the United States Bankruptcy Court for the Northern District of California. The Prevailing Bidder(s) and the Back-up Bidder(s), if designated, shall appear remotely at the Sale Hearing, in person or through a duly authorized representative and not solely through counsel.

14. Business Judgment. The Debtor may recommend a sale to any Qualified Bidder pursuant to a bid which the Debtor determines, exercising reasonable business judgment, to be in the best interests of the bankruptcy estate. The Debtor may reject, at any time before the entry of an order of the Court approving a bid from a Qualified Bidder, any bid that is deemed inadequate or insufficient, not in substantial conformity with the Bankruptcy Code or these Bidding Procedures, or contrary to the best interests of the estate and its creditors. In exercising business judgment as to which bid constitutes the highest or otherwise best bid, the Debtor may consider all factors which it may deem relevant, subject to the parties' right to object and raise any such issues with the Court. Subject to the Stalking Horse Agreement, the Debtor also may modify these bidding procedures, exercising reasonable business judgment, if the Debtor determines such modification to be in the best interests of the bankruptcy estate.

15. Disposition of Deposits. The Deposits will be held by the Debtor in a non-interest-bearing escrow or trust account and will not become property of the Debtor's estate. The Deposits will be retained by the Debtor, notwithstanding the Court's approval of any Sale, until no later than five (5) business days after the conclusion of the Auction, except for the Deposits of the Prevailing Bidder(s) and Backup Bidder(s). The deposits of the Prevailing Bidder(s) and the Back-up Bidder(s) shall be retained as earnest money to be used in the following ways:

a. The deposit of a Prevailing Bidder shall either be (i) applied at closing as a credit toward the purchase price of the Prevailing Bidder or, if the purchase price is paid in full at closing, returned to the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Prevailing Bidder, the deposit shall be retained by the Debtor as liquidated damages as provided in the Transaction Agreement, or (iii) in the event that the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Prevailing Bidder as provided in the Transaction Agreement.

b.  The deposit of a Back-up Bidder shall either be (i) returned to the Back-up Bidder upon the closing of the transaction with the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to close for any reason, applied at closing as a credit toward the purchase price of the Back-up Bidder, (iii) if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Back-up Bidder, retained by the Debtor as liquidated damages as provided in the Transaction Agreement, or (iv) if the sale to the Back-up Bidder shall fail to timely close by reason of a breach or default of the Debtor, the deposit shall be returned to the Back-up Bidder as provided in the Transaction Agreement.

16. Closing Date.  Any closing of the sale of the Sale Assets to a Prevailing Bidder must occur as soon as practicable but in any event within fifteen (15) days of the date on which the Sale Order becomes a final, non-appealable order (or such  date as the Debtor and Prevailing Bidder may mutually agree).  Any closing of the sale of the Sale Assets to a Back-up Bidder must occur within fifteen (15) days of the date on which the Debtor notifies the Back-up Bidder that the Prevailing Bidder has failed to timely close and that the Back-up Bidder has become the Prevailing Bidder (or such later date as the Debtor may agree).

17. Disclaimer.  By submitting an Initial Bid, each Bidder and Qualified Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Sellers or SC&H related to the Sale Assets ("Information"):

(a)      The Sale Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

 (b)      The Information has been prepared:

i.      for informational purposes only;

 ii.      from materials supplied by the Debtor, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

 iii.      to assist Bidders and Qualified Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtor, SC&H and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "Representatives") have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information. In all cases, Bidders and Qualified Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Bidders and Qualified Bidders should engage legal counsel, accountants, engineers, and/or such

EXHIBIT A

other professional advisors as Bidders and Qualified Bidders deem appropriate for evaluating the Assets.

(c)     None of Bidders, Qualified Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d)     Although the Debtor and SC&H have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Bidder's or Qualified Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtor and approved by the Court, the Debtor, SC&H or any of their respective Representatives:

i.      have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Sale Assets or with respect to the accuracy, reliability or completeness of the Information;

ii.      to the fullest extent permitted by law, shall have any liability whatsoever to Bidders, Qualified Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Bidder's, any Qualified Bidder's, or any of their Representative's reliance on the Information, (ii) Bidder's, Qualified Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtor, SC&H or any of their respective Representatives, or any errors or omissions in the Information;

iii.      shall have any liability or responsibility for any decisions made by any Bidder, Qualified Bidder or any of their Representatives in reliance on any Information;

iv.      will be under any obligation or duty (express or implied) to make available any Information to any Bidders, any Qualified Bidders, or any of their Representatives; and

v.      will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)     No contract or agreement providing for any sale shall be deemed to exist between a Bidder or Qualified Bidder and the Debtor unless and until a Qualified Bidder and the Debtor execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Bidders and Qualified Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any Sale unless and until a Bidder

or Qualified Bidder and the Sellers shall have executed and delivered such agreement(s) authorized and approved by the Court. Subject to the Stalking Horse Agreement, the Debtor reserves the right, in its discretion, to reject any and all proposals made by any Bidder or Qualified Bidder with regard to a Sale, and to terminate discussions and negotiations with a Bidder or Qualified Bidder at any time.  Subject to the terms of these Bidding Procedures and the Stalking Horse Agreement, the Debtor shall be free to establish and change any process or procedure with respect to a Sale as the Debtor in its sole discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a Sale with any other party without prior notice to any Bidder, Qualified Bidder or any other person).

(f)    The Debtor, SC&H and the Debtor's other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the Debtor which has been authorized and approved by the Court.  Bidders and Qualified Bidders may rely only on the representations and warranties expressly set forth in such agreements authorized and approved by the Court.

# NOTICE OF DESIGNATION STALKING HORSE BIDDER, BID DEADLINE, AND AUCTION

*By order of the US Bankruptcy Court for the District of California, San Jose Division*
*Case# 24-51678*

# Precision Swiss Products, LLC

## Auction to be held on December 11, 2024

### SUMMARY TIMELINE:

| | |
|---|---|
| **Bid Deadline for Qualified Bids and Deposits:** | 4:00 p.m. (Pacific Time), December 5, 2024 |
| **Auction:** | 10:00 a.m. (Pacific Time), December 11, 2024 |
| **Sale Hearing:** | 11:30 a.m. (Pacific Time), December 12, 2024 |
| **Auction Location:** | TBD |
| **Closing:** | Closing will take place as soon as practicable but in any event within fifteen (15) days of the date on which the Sale Order becomes a final, non-appealable order, with a target date of December 31, 2024 |

*Stalking Horse Bid:*

The Debtor has designated the following Stalking Horse Bid in connection with the sale of substantially all the assets of Precision Swiss Products, LLC:

1) **$5,000,000 for substantially of the assets**

SC&H Capital is soliciting bids to compete with the stalking horse bidder. Parties interested in submitting a Qualified Bid should submit a mark-up of the Stalking Horse asset purchase agreement, a copy of which will be available in the virtual data room when finalized, along with a deposit of 10% of the bid on or before the Bid Deadline. In addition, all bids must be accompanied by adequate evidence of ability to close the proposed transaction to be deemed a Qualified Bid. **Please note that a minimum Qualified Bid (topping bid) will be $5,600, 000.**

*A copy of the Sale Motion has been uploaded to the virtual data room and is available from SC&H Capital.*

For more information on how to become a Qualified Bidder, please contact the Debtor's Investment Banker:

Hank Waida
443-951-4849
hwaida@schgroup.com

EXHIBIT A

END OF ORDER

COURT SERVICE LIST

No service list required

KORNFIELD | NYBERG, BENDES, KUHNER & LITTLE, P.C.

1970 Broadway, Suite 600   Oakland, California 94612

# EXHIBIT B

| Collateral/Security | Location | Creditor | Credit Type |
|---|---|---|---|
| IT Equipment, Software and Computers | California | Dell (1 of 2) | Capital Lease |
| IT Equipment, Software and Computers | California | Dell (2 of 2) | Capital Lease |
| IT Equipment, Software and Computers | North Carolina | Lenovo (1 of 1) | Capital Lease |
| Zeiss CMM(pre-owned) | California | Ascentium (1 of 1) | Finance |
| 2 HURCOs and 1 Hardinge lathe | North Carolina | Alliance Funding Group | Capital Lease |
| RS55N Air Compressor and Dryer x3(x1 to CA) | North Carolina | Wells Fargo (1 of 1) | Capital Lease |
| Makino #3; DA300 Serial#276 | California | Wells Fargo (2 of 2) | Capital Lease |
| Makino #1; DA300 Serial # 264 | North Carolina | Midlands States Bank  (1 of 1) | Capital Lease |
| Only  Star 2 as collateral SN: 0876 (084) | California | Bryn Mawr Funding, was Royal Bank (1 of 1) | Finance |
| Zeiss Contura 6206 Serial # 732207560434 | California | Signature Financial LLC/ Flagstar Financial (1 of 1) | Capital Lease |
| Toyota Forklift Model 50-8FGCU32 Serial# 10908 | North Carolina | Toyota Commercial Financial (1 of 1) | Capital Lease |
| Makino #6; DA300; Serial # 281 | North Carolina | Old National (1 of 1) | Capital Lease |
| Star-20R II (CA) and Bar Feeder Serial #1783 | California | Pathward (1 of 1) | Finance |
| New Hyster Forklift S50CT2 Serial# B267V03005T | California | BMO Bank N.A. (1 of 1) | Capital Lease |
| Makino #5; DA300; Serial #280 | North Carolina | Siemens (1 of 1) | Capital Lease |
| Makino #4; DA300; Serial #279 | North Carolina | Amur (1 of 1) | Capital Lease |
| Univeral Robots UR10 with palletizing cabinet | California | PEAC Solutions/ was Marlin Business Bank (1of 1) | Finance |
| Keyence LM-1100,NA104601-1-A0001-1 | California | Regents Bank (1 of 1) | Capital Lease |
| Star 20JIIB | California | Highland Capital Corporation  (1 of 2) | Finance |
| MX-330 Matsuura | California | Highland Capital Corporation  (2 of 2) | Capital Lease |
| Cosen Saw C325NC | North Carolina | Stearns Bank (1 of 4) | Finance |
| Vericut | California | Stearns Bank (2 of 4) | Finance |
| ESPRIT; annual license? | California | Stearns Bank (3 of 4) | Finance |
| Renishaw RMP400 Radio Machine Probe | North Carolina | Stearns Bank (4 of 4) | Finance |
| HT, Inspection equipment, etc. | California | First Citizens Bank (1 of 6) | Finance |
| Server, Desktopx16, Laptopx5, Docksx5 | North Carolina | First Citizens Bank (2 of 6) | Capital Lease |
| Server, Phonesx28, 5 Laptops, 3 monitors | North Carolina | First Citizens Bank (3 of 6) | Capital Lease |
| Nak AS200MY Serial # KS206208 | North Carolina | First Citizens Bank (4 of 6) | Finance |
| 2018 Star SB 20 R Type C // Serial #0247 | California | First Citizens Bank (5 of 6) | Finance |
| 2 Server, 1 Laptops, 6 monitors, Desktopx10, | California | First Citizens Bank (6 of 6) | Capital Lease |
| Makino #2; DA300 Serial#267 | North Carolina | Makino (1 of 1) | Capital Lease |
| Star-32JII Lathe with Fanuc Series Fanuc Series 321-B Controller CNC Machine Serial # 1015 | North Carolina | Sumitomo Mitsui (1 of 2) | Capital Lease |
| Makino #7; DA300 Serial # 294 | North Carolina | Sumitomo Mitsui (2 of 2) | Capital Lease |
| Comparator VFG; #358201-01, Insp. Equip., Hard Tool | California | Vision Financial G. is now Civista Bank (1 of 3) | Capital Lease |
| Zeiss#2, Comparator, Inspection Equipment | North Carolina | Vision Financial G. is now Civista Bank (2 of 3) | Capital Lease |
| Leasehold Improvements: electrical, Office, piping, hard tooling | North Carolina | Vision Financial G. is now Civista Bank (3 of 3) | Capital Lease |
| MX-330 Matsuura | California | Summit (1 of 2) | Finance |
| Finecut WMC 500 II, 5-Axis type ABX Serial #FC0032 | North Carolina | Summit (2 of 2) | Finance |
| MX-330 Matsuura | California | LEAF (1 of 4) | Finance |
| Nak AS200MY Serial # KS205810 | North Carolina | LEAF // M&T Capital (2 of 4) | Finance |
| Zeiss CMM O-Inspect Serial #185240, Tumbler(CPC4000HD Finishing System Serial #210702) | North Carolina | LEAF (3 of 4) | Finance |
| 1 Cincinatti Chamfer machine (Centerless Grinder), 2 Servo Finishing Machines(1 Servo to CA) | North Carolina | LEAF (4 of 4) | Finance |
| Nomura NN32UB8K2 Serial # 204041605 (#17) | North Carolina | Mitsubishi HCCA (1 of 6) | Finance |
| Nomura NN-32YB3-XB Serial # 227101802 (#18) | North Carolina | Mitsubishi HCCA (2 of 6) | Finance |
| Nomura NN32UB8K2 Serial # 204111503 (#19) | North Carolina | Mitsubishi HCCA (3 of 6) | Finance |
| Nak AS200MY Serial # KS206309 (#3) | North Carolina | Mitsubishi HCCA (4 of 6) | Finance |
| Two (2) Nak AS200MY // Serial # KS 206501 & KS206410 | North Carolina | Mitsubishi HCCA (5 of 6) | Finance |
| KEYENCE LM-1100 INSTANT MEASURING SYSTEM Serial # 8C220002 | North Carolina | Mitsubishi HCCA (6 of 6) | Finance |